Gary Gotto (No. 007401)
**KELLER ROHRBACK L.L.P.**
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
ggotto@kellerrohrback.com
Tel.: (602) 230-6322

*Liaison Counsel for Plaintiff*

*[Additional Counsel on Signature Page]*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| John L. Wojichowski, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>Nikola Corporation, Trevor Milton, Mark A. Russell, and Kim J. Brady,<br><br>        Defendants. | Case No. _____<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>**CLASS ACTION**</u><br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff, John L. Wojichowski, ("Plaintiff"), by and through his attorneys, alleges upon personal knowledge as to his own acts, and upon information and belief as to all other matters, based upon the investigation conducted by and through his attorneys, which included, among other things, a review of documents filed by Defendants (as defined below) with the United States Securities and Exchange Commission (the "SEC"), news reports, press releases issued by Defendants, and other publicly available documents, as follows:

CLASS ACTION COMPLAINT – CASE NO.

## NATURE AND SUMMARY OF THE ACTION

1.     This is a federal securities class action on behalf of all investors who purchased or otherwise acquired Nikola Corporation ("Nikola" or the "Company") common stock between June 4, 2020 and September 9, 2020, inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

2.     Nikola purports to be a "vertically integrated zero emissions transportation systems provider that designs and manufactures state of the art battery electric and hydrogen electric vehicles, electric vehicle drivetrains, energy storage systems, and hydrogen fueling stations." Nikola has stated that its "core product offering includes battery electric and hydrogen fuel cell electric trucks and hydrogen fuel." Nikola also purports to develop electric vehicle solutions for military and outdoor recreational applications.

3.     The Company was founded in 2015 by Defendant Trevor Milton, and in June 2020, Nikola's shares began trading publicly on the NASDAQ stock exchange shortly after the execution of a reverse merger with VectoIQ Acquisition Corp.

4.     In violation of the Exchange Act, Nikola misled investors as to: (1) the present capabilities and manufacturability of the Company's purported fleet of vehicles; (2) the Company's professed manufacture of component parts for those vehicles in-house; (3) the Company's capacity and costs to produce hydrogen; and (4) Nikola's financial, technological, and operational profile. These misrepresentations were intended to, and did,

present a materially false image of Nikola's growth and success, and has led to inflated financial results and the artificial inflation of its stock price.

5.     Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts to investors. Specifically, Defendants misrepresented and/or failed to disclose that the Company was mischaracterizing: (1) the present capabilities and manufacturability of the Company's purported fleet of vehicles; (2) the Company's professed manufacture of component parts for those vehicles in-house; (3) the Company's capacity and costs to produce hydrogen; and (4) Nikola's financial, technological, and operational profile.

6.     Prior to the opening of trading on September 10, 2020, analyst Hindenburg Research published a blistering report entitled "Nikola: How to Parlay An Ocean of Lies Into a Partnership With the Largest Auto OEM in America." In this report, detailed below, Hindenburg referred to Nikola as "an intricate fraud built on dozens of lies over the course of its Founder and Executive Chairman Trevor Milton's career." Hindenburg added that it "gathered extensive evidence—including recorded phone calls, text messages, private emails and behind-the-scenes photographs—detailing dozens of false statements by" Defendant Milton. Hindenburg summarized: "[w]e have never seen this level of deception at a public company, especially of this size."

7.     On this news, shares of Nikola common stock fell approximately from their September 9, 2020 close of $42.37 per share to a September 11, 2020 close of $32.13 per share, a two day drop of approximately 24%.

8.     On September 14, 2020, after the markets closed, *Bloomberg* reported that the SEC was investigating Nikola to assess the merits of the Hindenburg Report.

3

9.     The *Wall Street Journal* reported, on September 15, 2020, that the United States Department of Justice was also investigating whether Nikola may have misled its investors.

10.     As a result of Defendants' false and misleading statements and omissions of material facts, Nikola's stock traded at artificially inflated prices during the Class Period and Plaintiff and other Class members have been damaged as a result.

## JURISDICTION AND VENUE

11.     The federal law claims asserted herein arise under and pursuant to §§ 10(b) and 20(a) of the Exchange Act, 15 U.S.C. § 78(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

12.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, § 27 of the Exchange Act, 15 U.S.C. § 78aa.

13.     This Court has jurisdiction over each Defendant named herein because each Defendant is an individual or corporation who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

14.     Venue is proper in this District pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1931(b), as the Company has its principal executive offices located in this District and conducts substantial business here.

15.     In connection with the acts, omissions, conduct and other wrongs in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

16.     Plaintiff John L. Wojichowski, as set forth in his Certification filed contemporaneously herewith, acquired shares of Nikola common stock at artificially inflated prices and has been damaged.

17.     Defendant Nikola Corporation is incorporated under the laws of the State of Delaware, with its principal place of business at 4141 E. Broadway Road, Phoenix, AZ 85040. Its common stock trades on the NASDAQ stock exchange under the symbol NKLA.

18.     Defendant Trevor Milton is Nikola's Founder, Executive Chairman, and former Chief Executive Officer.

19.     Defendant Mark A. Russell is Nikola's President and Chief Executive Officer.

20.     Defendant Kim J. Brady is Nikola's Chief Financial Officer.

21.     Defendants Milton, Russell, and Brady are named as Defendants for violations of all counts asserted herein, and are referred to as the "Individual Defendants." The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers, and the investing public, *i.e.*, the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material, non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and

that the positive representations that were being made were then materially false and/or misleading. The Individual Defendants are therefore liable for the misstatements and omissions plead herein.

## SUBSTANTIVE ALLEGATIONS

22.     Founded in 2015, Nikola purports to be a "vertically integrated zero emissions transportation systems provider that designs and manufactures state of the art battery electric and hydrogen electric vehicles, electric vehicle drivetrains, energy storage systems, and hydrogen fueling stations." Nikola has stated that its "core product offering includes battery electric and hydrogen fuel cell electric trucks and hydrogen fuel."

23.     Nikola operates in three business units: Truck, Energy, and Powersports. Nikola has stated that: "[t]he Truck business unit is developing and commercializing BEV and FCEV Class 8 trucks that provide environmentally friendly, cost effective solutions to the short haul and long haul trucking sector. The Energy business unit is developing and constructing a network of hydrogen fueling stations to meet hydrogen fuel demand for our FCEV customers. The Powersports business unit is developing electric vehicle solutions for military and outdoor recreational applications."

## DEFENDANTS' FALSE AND MISLEADING STATEMENTS AND/OR OMISSIONS OF MATERIAL FACTS

24.     On June 4, 2020, the beginning of the Class Period, Nikola merged with VectoIQ Acquisition Corp., an already existing, publicly-listed acquisition (or "blank check") company. Under the terms of the agreement, VCTIQ Merger Sub Corp., a wholly-owned subsidiary of VectoIQ, would merge into and with Nikola, with Nikola surviving the merger and becoming a wholly-owned direct subsidiary of VectoIQ. At the closing of

the business combination, each outstanding share of Nikola common stock, was canceled and automatically converted into the right to receive 1.901 shares of VectoIQ.

25.    On June 2, 2020, VectoIQ's stockholders approved the business combination, which approval was announced on June 3, 2020. Shares of NKLA stock began being publicly traded on the NASDAQ stock exchange on June 4, 2020.

26.    On June 3, 2020, after the markets closed, Nikola issued a press release announcing the closing of the business combination with VectoIQ. In this release, Nikola stated that the raised capital, of over $700 million, would be used to "accelerate Nikola's production of battery-electric (BEV) and hydrogen fuel-cell electric vehicles (FCEV)," and that "Nikola's pre-orders represent more than $10 billion in potential revenue." Nikola further stated that its "hydrogen network [was] anticipated to cover North America; set to become the largest hydrogen network in the world."

27.    On June 6, 2020, several skeptics began questioning what Nikola had ever actually developed. In a series of tweets, Defendant Milton stated: "[a]ll the technology, software, controls, E axle, inverters etc we do internally. We joint venture with those that know the supply chain and manufacturing like Iveco. We outsource autonomy. We outsource hardware production."[1]

28.    On June 15, 2020, Nikola filed a Form S-1 Registration Statement with the SEC for the sale of up to 53,390,000 shares of common stock and up to 23,890,000 shares of common stock issuable upon the exercise of warrants.

---

[1] https://twitter.com/laurisyrjaniemi/status/1269176058768752640 (last visited on September 14, 2020).

29.     On July 1, 2020, again facing questions over what Nikola was actually developing, Defendant Milton tweeted: "[w]e don't make the cells. We make the entire pack like the top guys do. We do have an OEM making our truck but all internals are Nikola's IP; batteries, inverters, software, ota, infotainment, controls, etc. We own it all in house. Just not the plant to build the truck."[2]

30.     On July 5, 2020, Defendant Milton reiterated: "All major components are done in house; batteries, inverters, software, controls, infotainment, over the air, etc, you don't care about the truth you're just out to be a keyboard warrior."[3]

31.     Relatedly, on July 14, 2020, Nikola posted a video walking viewers through the powertrain for the Nikola Two model.[4] Defendant Milton described Nikola's in-house inverters and how other OEMs are asking to use Nikola's proprietary inverter technology, and said: "[w]e do all the e-axle design in house. All the gears, the gear reductions. . . . And, also, the inverters as well. All inverters on the Nikola truck are probably some of the most advanced software systems that I know of anywhere in the automotive world. Why do I know that? It's because other OEMs are asking us to use it."

32.     On July 15, 2020, Defendant Milton tweeted out a video, with a caption he wrote: "0-60 in under 5 seconds in the #nikolatwo hydrogen semi truck. Damn that was fast! . Edited /professional content coming soon for everyone but here's my raw cell phone

---

[2] https://twitter.com/moonwalk19691/status/1278359414811099136 (last visited on September 14, 2020).

[3] https://twitter.com/IsaacTaub56/status/1279654385686102016 (last visited on September 14, 2020).

[4] https://www.youtube.com/watch?v=7C2LDmkEmP0 (last visited on September 14, 2020).

behind the scene."[5] Defendant Milton added that the Company would be "posting Go Pro video that's being edited, etc. Be up soon showing 0-60 camera time, outside view and also side by side against a diesel truck. This is just a teaser shot," and "[c]oming next month in the edited professional videos with side by side comparisons to diesel and 0-60 times." The Company has not released any such video.

33.     On July 17, 2020, Nikola filed a Form 424B3 prospectus with the SEC to offer up to 53,390,000 shares of common stock and up to 23,890,000 shares of common stock issuable upon the exercise of warrants. The SEC declared this prospectus effective on the same day. In this prospectus, Nikola stated:

> We are a vertically integrated zero-emissions transportation solution provider that designs and manufactures state-of-the-art battery-electric and hydrogen fuel cell electric vehicles, electric vehicle drivetrains, energy storage systems, and hydrogen fueling stations. Our core product offering is centered around our battery-electric vehicle ("BEV") and hydrogen fuel cell electric vehicle ("FCEV") Class 8 semi-trucks. The key differentiator of our business model is our planned network of hydrogen fueling stations. We are offering a revolutionary bundled lease model, which provides customers with the FCEV truck, hydrogen fuel, and maintenance for a fixed price per mile, locks in fuel demand and significantly de-risks infrastructure development.

34.     In the same July 17, 2020 Prospectus, Nikola further stated:

> The Truck business unit is developing and commercializing battery-electric vehicle ("BEV") and hydrogen fuel cell electric vehicle ("FCEV") class 8 trucks that provide environmentally friendly, cost-effective solutions to the short haul and long-haul trucking sector. The Energy business unit is developing and constructing a network of hydrogen fueling stations to meet hydrogen fuel demand for FCEV customers. The Powersports business unit is developing electric vehicle solutions for military and outdoor recreational applications.

---

[5] https://twitter.com/nikolatrevor/status/1283425947199221761?s=20 (last visited September 14, 2020).

35.     The July 17, 2020 Prospectus also included a discussion of Nikola's products, providing, in relevant part:

> As the commercial transportation sector transitions towards zero-emission solutions, we believe there will be a need to offer tailored solutions that meet the needs of each customer. Unlike the passenger vehicle market, where users typically return home each day, the commercial vehicle market contains multiple use cases often requiring vehicles to be out on the road for days, or weeks at a time. By offering both BEVs (for short-haul) and FCEVs (for medium- and long-haul), we believe Nikola is uniquely positioned to disrupt the commercial transportation sector by providing solutions that address the full range of customer needs.
>
> *       *       *
>
> We have developed an extensive portfolio of proprietary technologies that are embedded and integrated in our highly specialized BEV and FCEV zero-emission vehicles. In addition, we plan to leverage our zero-emission powertrain expertise to address transportation adjacencies as exemplified with our Powersports product offerings.
>
> *       *       *
>
> Our management team is primarily focused on the core semi-truck and hydrogen station programs. However, we believe that we can leverage our zero-emission powertrain expertise to address transportation adjacencies. Our Powersports product offerings provide significant benefits to our core semi-truck and hydrogen station programs, including branding halo, driving awareness of Nikola and our industry-defining technology, and R&D synergies on electric drivetrain, battery technology, and other core components.
>
> *       *       *
>
> In addition to building heavy-duty zero-emission trucks, Nikola is also developing fueling and charging stations in North America and Europe to support our FCEV fleet customers and to help capture first mover advantage with respect to next generation fueling infrastructure. Over the next 8 to 10 years, Nikola intends to collaborate with strategic partners to build up to 700 fueling and charging stations in North America and approximately 70 fueling and charging stations in Europe.
>
> *       *       *

Nikola's bundled lease includes maintenance for its vehicles. Service and maintenance of an electric vehicle is expected to be lower than the traditional ICE vehicle which has been proven in the electric passenger vehicle market. Fewer parts and considerably reduced complexity of the key drivetrain components should result in fewer breakdowns and less preventive maintenance, leading to better uptime and lower maintenance cost to operators. Reduced downtime could also lead to increased revenue for fleets as asset productivity increases.

*       *       *

A key requirement for our fleet customers is knowing there is an available service infrastructure for the maintenance and repair of our vehicles. Nikola is building a strong network of providers, a robust preventive maintenance program, as well as several levels of service depending on the complexity and type of maintenance required.

Nikola's plans with respect to the service and maintenance of its vehicles is expected to include the following:

- Electric vehicles have a system of sensors and controls that allow for precise monitoring of the vehicle and component operation performance. We will use this data to provide smart predictive maintenance, which will decrease downtime and costs by identifying a potential problem before it results in a breakdown.

- Nikola will have the ability to provide over the air updates and software fixes when the vehicle is stopped. This can significantly reduce the time for repair and improve uptime.

- In cases where a customer has their own maintenance infrastructure, we will identify and provide procedures for items that can be maintained at their shops. This could include procedures such as tire changes, wiper and windshield repair and brake servicing.

- In cases where the customer does not have a maintenance infrastructure or for more complex items, Nikola is leveraging its exclusive partner Thompson Caterpillar for maintenance and warranty work. Customers will have access to an already established network of 800 service stations as well as the ability to deploy a mobile service model. We will also support our partners with technologies like augmented reality and web-enabled video to support technicians for very complex tasks or newly identified issues.

- If a vehicle requires maintenance of a complex system such as the fuel cell or battery, some of those items can be swapped or replaced with relative ease. This allows us to repair the downed component in the background and minimize vehicle downtime. We are also planning to develop a network of trained technicians that can travel to a customer or service partner site as necessary.

36.     Also on July 17, 2020, in an interview on the *TeslaCharts* podcast, Defendant Milton asserted that Nikola had been able to "chop the cost of hydrogen from $16/kg down to – we're down below $3/kg on our hydrogen now."[6] In the same podcast, Defendant Milton stated:

> We have the most advanced battery electric truck in the world. We have a truck coming into production right now with 720 kwh the largest battery we know of on a truck anywhere in the world coming into production. We have five of them coming off the assembly line right now in Ulm, Germany. They'll enter production end of next year-ish, somewhere around there.

37.     On July 22, 2020, Nikola issued a notice of redemption for its public warrants, through which the Company expected to raise an additional $264.5 million in cash (23 million outstanding public warrants at an exercise price of $11.50).

38.     On August 1, 2020, Defendant Milton appeared on *Barron's Roundtable* on the Fox Business Channel. When asked about hydrogen, Defendant Milton stated:

> We saw an opportunity to bring the cost of hydrogen down going zero-emission and putting it on parity with diesel, and it's the first time in history that's been able to be done, so it went from about $16/kg and we are down now below $4/kg. And there's a lot of reasons for that, but the main one is standardization of a hydrogen station worldwide has allowed us to drive that cost down dramatically. We tell people we're an energy technology company that happens to build really cool vehicles.[7]

---

[6] https://feeds.buzzsprout.com/758369/4605602-episode-35-trevor-milton?play=true (last visited on September 14, 2020).

[7] https://www.youtube.com/watch?reload=9&v=nbrgQj4xlbk (last visited on September 14, 2020).

39.     On August 4, 2020, Nikola reported its financial results for the second quarter of 2020. The Company reported a net loss for the quarter of $86,643,000, and net loss per share of $0.33. In the accompanying press release filed on Form 8-K with the SEC, Defendant Russell stated: "[i]n the second quarter of 2020, Nikola met predetermined milestones on our journey toward becoming the zero-emissions transportation leader in the global heavy truck market."

40.     In the Form 10-Q filed with the SEC, Defendants stated that:

We are a vertically integrated zero emissions transportation systems provider that designs and manufactures state of the art battery electric and hydrogen electric vehicles, electric vehicle drivetrains, energy storage systems, and hydrogen fueling stations. To date, we have been primarily focused on delivering zero emission Class 8 trucks to the commercial transportation sector in the U.S. and in Europe. Our core product offering includes battery electric and hydrogen fuel cell electric trucks and hydrogen fuel.

We operate in three business units: Truck, Energy and Powersports. The Truck business unit is developing and commercializing BEV and FCEV Class 8 trucks that provide environmentally friendly, cost effective solutions to the short haul and long haul trucking sector. The Energy business unit is developing and constructing a network of hydrogen fueling stations to meet hydrogen fuel demand for our FCEV customers. The Powersports business unit is developing electric vehicle solutions for military and outdoor recreational applications.

In 2019, we partnered with Iveco, a subsidiary of CNHI, a leading European industrial vehicle manufacturing company. Together, Nikola and Iveco are jointly developing cab over BEV and FCEV trucks for sale in the European market which will be manufactured through a 50/50 owned joint venture in Europe. In April 2020, the Company and Iveco entered into a series of agreements which established the joint venture, Nikola Iveco Europe B.V. Our joint venture with Iveco provides us with the manufacturing infrastructure to build BEV trucks for the North American market prior to the completion of our planned greenfield manufacturing facility in Coolidge, Arizona. The operations of the joint venture are expected to commence in the third quarter of 2020.

41.     Also in this August 4, 2020 Form 10-Q filing, Nikola stated:

13

**Evaluation of Disclosure Controls and Procedures**

We maintain a system of disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934 (the "Exchange Act") designed to ensure that the information required to be disclosed by us in the reports that we file or submit under the Exchange Act is recorded, processed, summarized and reported within the time periods specified in the rules and forms of the Securities and Exchange Commission, and is accumulated and communicated to our management, including our Chief Executive Officer (our principal executive officer) and Chief Financial Officer (our principal financial officer), as appropriate, to allow timely decisions regarding required disclosure.

Our management, with the participation of our Chief Executive Officer and our Chief Financial Officer, has evaluated the effectiveness of our disclosure controls and procedures under the Exchange Act as of June 30, 2020, the end of the period covered by this Quarterly Report on Form 10-Q. Based on such evaluation, our Chief Executive Officer and our Chief Financial Officer have concluded that, as of such date, our disclosure controls and procedures were effective.

**Changes in Internal Control over Financial Reporting**

There were no changes in our internal control over financial reporting, as identified in connection with the evaluation required by Rule 13a-15(d) and Rule 15d-15(d) of the Exchange Act, that occurred during the three months ended June 30, 2020 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

42.     Defendants Russell and Brady signed certifications accompanying Nikola's Second Quarter 2020 Form 10-Q, pursuant to § 302 of the Sarbanes-Oxley Act of 2002, in which they certified that "[b]ased on [their] knowledge," the Second Quarter 2020 Form 10-Q "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report."

43.     In their certifications, Defendants Russell and Brady further certified that "[b]ased on [their] knowledge, the financial statements, and other financial information

14

included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report."

44.     Also on August 4, 2020, Defendants Russell and Brady participated in the Company's earnings call with analysts. During this call, Defendant Russell stated that Nikola's "fuel-cell electric truck reservation book exceeded 14,000 units or approximately $10 billion in potential revenue some time ago. . . . Rolling out our hydrogen station network along corporate customers' dedicated routes, or milk runs, allows us to guarantee a high degree of hydrogen station utilization and avoid speculative investments in fueling infrastructure."

45.     On this call, a Deutsche Bank analyst asked: "I think that if there's one area maybe of questions or a little bit of skepticism is around some of the assumptions around your cost of electricity in the future when supplying hydrogen. Can you maybe give us some elements around – have you had discussions with electricity companies yet? Any sort of strong indication that this kind of input cost is actually realistic? Or that you would have partners who are willing to work with you on this?"

46.     Defendant Russell responded that: "we can make hydrogen for about a decimal move [sic] or better on the cost of electricity. So, if we can get electricity to $0.035, then we should be able to make hydrogen at 350 a kilo or better, given our current technology and the current design of our stations. So, the key for us to have our target hydrogen cost is for us to get the electricity at the right cost."

47.     An analyst from RBC Capital Markets asked on the August 4, 2020 call: "Can I squeeze in one more on Europe? IVECO talked about the JV you set up with them.

Is everything you're going to do in Europe through this JV – I think it's for both battery and fuel cells. They also talked about this sort of complete turnkey offering for customers. Is that similar to your fuel-cell lease solution in the United States?"

48.    Defendant Russell responded:

[T]he joint venture with IVECO is to produce trucks in Europe. So, we have a facility that's being modified for mass production of our trucks in Europe. It will start with the Tre battery electric vehicle first and then it'll eventually add the fuel-cell version over there. And if we build those two versions of our vehicles out of the Ulm, Germany facility that we are just about to finish. We actually have the first five prototypes coming off the end of the facility at this point. And they'll go on the test track here in the next couple of months. And we'll go from there. So, that's the plan for Europe.

49.    The statements in ¶¶ 26-27, 29-36, and 38-48 were materially false and misleading and omitted to disclose material information. Specifically, Defendants misrepresented and/or failed to disclose to investors that the Company was overstating and/or mischaracterizing: (1) the present capabilities and manufacturability of the Company's purported fleet of vehicles; (2) the Company's professed manufacture of component parts for those vehicles in-house; (3) the Company's capacity and costs to produce hydrogen; and (4) Defendants' public statements were materially false and misleading at all relevant times.

50.    Defendants knew, or in reckless disregard for the truth should have known, that at the time the statements in ¶¶ 26-27, 29-36, and 38-48 were made, they were false and/or misleading, and/or failed to disclose material information to investors.

**THE TRUTH BEGINS TO EMERGE**

51.    On September 10, 2020, prior to the commencement of trading in Nikola's stock, analyst Hindenburg Research published a scathing report entitled "Nikola: How to

Parlay An Ocean of Lies Into a Partnership With the Largest Auto OEM in America."[8] In this report, Hindenburg referred to Nikola as "an intricate fraud built on dozens of lies over the course of its Founder and Executive Chairman Trevor Milton's career."

52.     Hindenburg stated that it "gathered extensive evidence—including recorded phone calls, text messages, private emails and behind-the-scenes photographs—detailing dozens of false statements by Nikola Found Trevor Milton. ***We have never seen this level of deception at a public company, especially of this size.***" (Emphasis added).

53.     Hindenburg detailed that "Nikola staged a video called 'Nikola One in Motion' which showed the semi-truck cruising on a road at a high rate of speed. Our investigation of the site and text messages from a former employee reveal that the video was an elaborate ruse—Nikola had the truck towed to the top of a hill on a remote stretch of road and simply filmed it rolling down the hill."

54.     Hindenburg stated that in October 2019, Nikola "announced that it would revolutionize the battery industry. This was to be done through a pending acquisition, but the deal fell through when Nikola realized (a) the technology was vaporware and (b) the President of the battery company had been indicted months earlier over allegations that he conned NASA by using his expense account to procure numerous prostitutes."

55.     Hindenburg continued: "Nikola has never walked back the claims relating to its battery technology. Instead, Trevor continued to publicly hype the technology even after becoming aware of the above issues. The revolutionary battery technology never existed – now, Nikola plans to use GM's battery technology instead."

---

[88] https://hindenburgresearch.com/nikola/ (last visited September 14, 2020).

56.     The Hindenburg report further provided that "[i]nexpensive hydrogen is fundamental to the success of Nikola's business model. Trevor has claimed in a presentation to hundreds of people and in multiple interviews to have succeeded at cutting the cost of hydrogen by ~81% compared to peers and to *already be producing hydrogen*. Nikola has not produced hydrogen at this price or at *any* price as he later admitted when pressed by media." (Emphasis in original).

57.     Hindenburg continued that "[c]laims of owning energy producing assets is not new for Nikola. Trevor claimed that Nikola's headquarters has 3.5 megawatts of solar panels on its roof producing energy. Aerial photos of the roof and later media reports show that the supposed panels don't exist." Moreover, "[a]t one point Nikola claimed to own its own natural gas wells. There is no evidence in company filings to support this. The claims were eventually quietly removed from Nikola's website."

58.     In addition, Hindenburg "debunk[ed] Trevor's claims regarding [Nikola's] semi-truck that 'this thing fully functions and works . . . this is a real truck."

59.     Moreover, although Defendants had stated that Nikola had five Nikola Tre models "coming off the assembly line right now in Ulm, Germany," on September 9, 2020, Hindenburg spoke with Thorsten Schoenfeld, spokesman for Bosch's electro-mobility unit headquarters in Germany, who Hindenburg reported as having said "[n]o they are not ready yet. I don't know exactly the year but we're working on it." Mr. Schoenfeld added, when asked what exactly Nikola had planned to show at the Hannover trade fair (which was canceled due to the COVID-19 pandemic): "[w]e would have shown different innovations and a kind of truck but not a real truck but a showcase."

60.     Hindenburg also wrote that it "learned through emails and interviews with former partners that Trevor had an artist stencil "H2" and "Zero Emission Hydrogen Electric" on the side of the Nikola One despite it having no hydrogen capabilities whatsoever; it was built with natural gas components."

61.     Hindenburg flagged that "Nikola's key partners and backers have been cashing out aggressively. Worthington, Bosch and ValueAct have all sold shares. Worthington sold $237 million shares over a 2-day span in July and another $250 million in August." Hindenburg also noted that Defendant Milton "cashed out $70 million around the IPO and amended his share lock-up from 1-year to 180 days. If he is fired, his equity awards immediately vest and he is entitled to collect $20 million over two years."

62.     The Hindenburg report also contradicted Nikola's statements about "major components," including inverters, being "done in house." Specifically, Hindenburg noted that in the July 14, 2020 video the Company released (referenced above), there was a green piece of masking tape on the inverter, and that the "inverter is not proprietary to Nikola. Cascadia Motion, a small company in Portland, offers such inverters off the shelf. The tape is covering the label which would normally show the product description and other specifications that make clear who built the component."

63.     The Hindenburg report also questioned Nikola's report of 14,000 cancelable reservations for its trucks, flagging multiple issues with the Company's purported large agreements. For example, Hindenburg asserted that the Company's agreement with Anheuser Busch for 800 trucks allows Budweiser to cancel anytime with 1-year notice, if a 90-day road test does not perform up to expectations, or if the products are not delivered at all. Moreover, Hindenburg wrote that Nikola's reported deal with Arizona-based trash

company Republic Services for 2,500 refuse trucks appear to be for battery electric vehicles, and not for hydrogen-powered models.

64.    On this news, Nikola's stock price plummeted, closing at $32.13 on September 11, 2020, down approximately 24% over two days from its September 9, 2020 closing price of $42.37 per share.

65.    On September 14, 2020, after the markets closed, *Bloomberg* reported that the SEC was investigating Nikola to assess the merits of the Hindenburg Report.

66.    The *Wall Street Journal* reported on September 15, 2020, during intraday trading, that the United States Department of Justice was investigating whether Nikola misled their investors.

67.    Also, on September 15, 2020 Nikola issued a detailed press release attempting to refute the Hindenburg Report's allegations. Specifically, Nikola attempted to defend the video it released of one of its trucks rolling down a hill, and criticized by Hindenburg, claiming Nikola "never said the truck was driving under its own propulsion" even though Nikola titled the video "In Motion."

68.    Nikola's stock price closed at $32.83 on September 15, 2020, down from its September 14, 2020 closing price of $35.79, an 8% decline.

69.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of Nikola's common stock, Plaintiff and other members of the Class have suffered significant losses and damages.

## CLASS ACTION ALLEGATIONS

70.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of all persons and entities who purchased or

otherwise acquired Nikola common stock between June 4, 2020 and September 9, 2020, inclusive, seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5. Excluded from the Class are Defendants, directors and officers of the Company, as well as their families and affiliates.

71.     The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

72.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

      a.   Whether the Exchange Act was violated by Defendants;

      b.   Whether Defendants omitted and/or misrepresented material facts;

      c.   Whether Defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

      d.   Whether Defendants knew or recklessly disregarded that their statements were false and misleading;

      e.   Whether the price of the Company's stock was artificially inflated; and

      f.   The extent of damage sustained by Class members and the appropriate measure of damages.

73.   Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct alleged herein.

74.   Plaintiff will adequately protect the interests of the Class and have retained counsel who are experienced in class action securities litigation. Plaintiff has no interests that conflict with those of the Class.

75.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## FRAUD ON THE MARKET

76.   Plaintiff will rely upon the presumption of reliance established by the fraud-on- the-market doctrine that, among other things:

   a. Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

   b. The omissions and misrepresentations were material;

   c. The Company's common stock traded in efficient markets;

   d. The misrepresentations alleged herein would tend to induce a reasonable investor to misjudge the value of the Company's common stock; and

   e. Plaintiff and other members of the class purchased the Company's common stock between the time Defendants misrepresented or failed to disclose material facts.

77.   At all relevant times, the markets for the Company's stock were efficient for the following reasons, among others: (i) the Company filed periodic public reports with the SEC; and (ii) the Company regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press

releases on the major news wire services and through other wide-ranging public disclosures such as communications with the financial press, securities analysts, and other similar reporting services. Plaintiff and the Class relied on the price of the Company's common stock, which reflected all information in the market, including the misstatements by Defendants.

## NO SAFE HARBOR

78.     The statutory safe harbor provided for forward-looking statements under certain conditions does not apply to any of the allegedly false statements pleaded in this Complaint. The specific statements pleaded herein were not identified as forward-looking statements when made.

79.     To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

## SCIENTER ALLEGATIONS

80.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Nikola, their control over, and/or receipt and/or modification of Nikola's allegedly materially misleading misstatements and/or their

associations with the Company which made them privy to confidential proprietary information concerning Nikola, participated in the fraudulent scheme alleged herein.

**LOSS CAUSATION**

81.     On September 10, 2020, analyst Hindenburg Research issued its highly critical research report, as alleged herein. On this news, Nikola common stock plummeted closing at $32.13 on September 11, 2020, down approximately 24% over two days from its September 9, 2020 closing price of $42.37 per share and an 8% drop on September 15, 2020.

**CAUSES OF ACTION**

**COUNT ONE**
**Violations of § 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder**

82.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

83.     During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose the material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading.

84.     Defendants violated § 10(b) of the Exchange Act and Rule 10b-5 in that they: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as

24

a fraud and deceit upon those who purchased or otherwise acquired the Company's securities during the class period.

85.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for the Company's common stock. Plaintiff and the Class would not have purchased the Company's common stock at the price paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

**COUNT TWO**
**Violations of § 20(a) of the Exchange Act**
**(Against the Individual Defendants)**

86.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

87.     The Individual Defendants acted as controlling persons of the Company within the meaning of § 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions at the Company, the Individual Defendants had the power and authority to cause or prevent the Company from engaging in the wrongful conduct complained of herein. The Individual Defendants were provided with or had unlimited access to the documents described above which contained statements alleged by Plaintiff to be false or misleading both prior to and immediately after their publication, and had the ability to prevent the issuance of those materials or to cause them to be corrected so as not to be misleading.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment as follows:

a) determining that this action is a proper class action pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Class as defined herein, and a certification of Plaintiff as class representative pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointment of Plaintiff's counsel as Lead Counsel;

b) awarding compensatory and punitive damages in favor of Plaintiff and the other class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including pre-judgment and post- judgment interest thereon.

c) awarding Plaintiff and other members of the Class their costs and expenses in this litigation, including reasonable attorneys' fees and experts' fees and other costs and disbursements; and

d) awarding Plaintiff and the other Class members such other relief as this Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury in this action of all issues so triable.

Dated: September 17, 2020

Respectfully submitted,

By: */s/ Gary Gotto*
Gary Gotto (No. 007401)
**KELLER ROHRBACK L.L.P.**
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
ggotto@kellerrohrback.com
Tel.: (602) 230-6322

*Liaison Counsel for Plaintiff*

26

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Jeffrey C. Block
Jacob A. Walker
Stephen J. Teti
mailto:gasciolla@labaton.com
**BLOCK & LEVITON LLP**
260 Franklin St., Suite 1860
Boston, MA 02110
Tel.: (617) 398-5600
Fax: (617) 507-6020
jeff@blockleviton.com
jake@blockleviton.com
steti@blockleviton.com

*Counsel for Plaintiff*

## PLAINTIFF'S CERTIFICATION

I, John L. Wojichowski, hereby certify that the following is true and correct to the best of my knowledge, information, and belief:

1. I have reviewed the facts and allegations against **Nikola Corporation** (the "Company"), and have authorized the filing of a complaint on my behalf.

2. I did not purchase the securities that are the subject of this lawsuit at the direction of counsel or to participate in any private action arising under the federal securities laws.

3. My transactions in the Company's common stock during the Class Period are as follows:

| Date | Transaction Type (Buy/Sell) | Quantity of Shares | Price Per Share (USD) |
|------|------|------|------|
| September 8, 2020 | Buy | 843 | $49.26 |
| September 9, 2020 | Buy | 256 | $45.99 |
| September 9, 2020 | Buy | 273 | $43.85 |
| September 10, 2020 | Buy | 245 | $38.00 |
| September 11, 2020 | Sell | 1,617 | $33.71 |

4. I am willing to serve as a representative party on behalf of the class in this action, including providing testimony at deposition and trial, if necessary.

5. During the three-year period preceding the date of my signing this Certification, I have never sought to be appointed, nor ever been appointed, as lead plaintiff or class representative in any class action arising under the securities laws of the United States.

6. I will not accept any payment for serving as a representative party on behalf of the Class beyond each of our *pro rata* shares of any possible recovery, except for an award, as ordered or approved by the Court, for reasonable costs and expenses (including lost wages) directly relating to my representation of the Class.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: 09 / 16 / 2020

John Wojichowski
_____
John L. Wojichowski